**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

DENARD C. TRAPP,

        Plaintiff,

v.

STATE OF NEW JERSEY, *et al.*,

        Defendants.

Case No. 3:20-cv-10404 (BRM) (ZNQ)

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

    Before this Court is a Motion to Dismiss (ECF No. 4) filed by Defendants the State of New Jersey (the "State"), the Honorable Patricia Del Bueno Cleary, P.J. Ch. (ret.) ("Judge Cleary"), the Honorable Dennis O'Brien, J.S.C. (ret.) ("Judge O'Brien") (together, the "Defendant Judges") and Robert Konzelmann ("Konzelmann") (collectively, "State Defendants") seeking to dismiss with prejudice *pro se* Plaintiff Denard C. Trapp's ("Plaintiff") Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The motion is unopposed. Pursuant to Federal Rule of Civil Procedure 78(b), this Court did not hear oral argument. For the reasons set forth herein and for good cause shown, State Defendants' Motion to Dismiss (ECF No. 4) is **GRANTED**.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

    For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document

---

[1] The Court refers the reader to Chief Judge Wolfson's September 19, 2018 Opinion for additional factual and procedural history. *See Trapp v. New Jersey*, Civ. A. No. 1710709, 2018 WL 4489680 (D.N.J. Sept. 19, 2018).

*integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

### A. Plaintiff's State Court Foreclosure Action

On November 30, 2006, Plaintiff entered into a mortgage agreement with FGC Commercial Mortgage Finance, d/b/a Fremont Mortgage in the amount of $420,000.00 plus interest. (*See* ECF No. 1-1 at 38.) On March 1, 2012, Plaintiff defaulted on the mortgage. (*Id.* at 40.) By assignment of mortgage dated March 13, 2013, the mortgage was assigned to GDBT I Trust 2011-1. (*Id.*) On April 5, 2013, GDBT I Trust 2011-1 filed suit in the Superior Court of New Jersey, Chancery Division, Monmouth County, seeking Plaintiff's payment of the amount remaining on the mortgage plus interest, advances, attorneys' fees and costs (the "Foreclosure Complaint"). (*Id.* at 41–42.) On June 5, 2013, Plaintiff filed an Answer with Affirmative Defenses to the Foreclosure Complaint, asserting, among other things, that GDBT I Trust 2011-1 be enjoined from prosecuting foreclosure proceedings against Plaintiff . (*Id.* at 54.)

On November 21, 2013, Judge Cleary inadvertently signed an order denying summary judgment in favor of GDBT I Trust 2011-1 and granting Plaintiff leave to amend his Answer to the Foreclosure Complaint ("November 2013 Order"). (ECF No. 1-1 at 60–61.) Also, in the November 2013 Order, Judge Cleary noted Plaintiff's cross-motion for summary judgment would not be considered because of late filing. (*Id.* at 68.) After realizing the error, on December 2, 2013, Judge Cleary *sua sponte* vacated the November 2013 Order noting it was signed and filed in error. (*Id.* at 63.) Plaintiff did not move for reconsideration. (*See id.* at 68.) An uncontested judgment was entered on or about November 22, 2014. (*Id.*) Ultimately, Plaintiff's property was foreclosed upon and sold at a sheriff's sale for $200.00. (*See id.* at 81.) Following the sheriff's sale, Plaintiff

still owed over $415,000.00 on the mortgage. (*See id.*) On February 4, 2016, Plaintiff sought to stay his eviction which the court denied. (*Id.* at 69.) Plaintiff again sought to stay his eviction on March 28, 2016, which was also denied. (*Id.*)

On April 13, 2016, Plaintiff sought emergent relief from Judge Cleary, namely a stay of Plaintiff's eviction from the property. (*See id.* at 69.) On April 14, 2016, Judge Cleary denied Plaintiff's request, stating

> this is at least the third time that [Plaintiff] has come here seeking to stay the eviction . . . . There was an order for summary judgment back on November 21st 2013. There was an uncontested judgment that was entered on September 22nd 2014, which means that he got notice of the judgment . . . . So I find that [Plaintiff] has had numerous opportunities to object to this judgment of the order granting summary judgment. His argument first time was standing. Then he has changed his argument. I find that there is no reason at this time to stay the eviction. I will deny the application.

(*Id.* at 69–70.)

### B. Plaintiff's State Court Criminal Prosecutions

Following Plaintiff's eviction from the property, on September 12, 2016, Plaintiff was charged with (1) third-degree assault on a law enforcement officer; (2) fourth-degree assault on a law enforcement officer; (3) third-degree resisting arrest; (4) fourth-degree criminal trespass; and (5) fourth-degree criminal mischief. (*See id.* at 101.)[2] These criminal charges stemmed from Plaintiff's trespass onto the property and subsequent property damage,[3] as well as Plaintiff's

---

[2] The fourth-degree criminal trespass charge was dismissed, and the fourth-degree criminal mischief charge was remanded to the Tinton Falls Municipal Court. (ECF No. 1-1 at 101–02; ECF No. 4-2 at 7.)

[3] According to a police officer report, Plaintiff was observed in "possession of a black 'Sharpie' style marker," and wrote on plywood board at the property "If you're on this property without the [owner's] Denard C. Trapp consent! You are trespassing and will be held accountable. So remove yourself immediately!" (ECF No. 1-14 at 2.)

3

attempt to resist arrest when law enforcement arrived to the scene. (*Id.* at 2, 97–99, 101.) Plaintiff was later indicted under indictment number 17-01-30-I. (ECF No. 4-2 at 7.) Following a jury trial, on February 14, 2019, Plaintiff was found guilty of third-degree resisting arrest. (*Id.*) He was sentenced to four years in New Jersey State Prison and ordered to not return to the property. (*Id.*)[4]

On September 14, 2018, Plaintiff once again returned to the property, declaring to the property owners that he was the owner. (ECF No. 4-2 at 11–12.) Subsequently, he was charged with (1) the disorderly persons offense of harassment; (2) third-degree stalking; and (3) fourth-degree defiant trespass. (*Id.* at 14.) Again, Plaintiff was indicted, this time under indictment number 18-11-1516-I. (*Id.*) Following a jury trial, this time represented by counsel, on May 10, 2019, Plaintiff was convicted of fourth-degree stalking, sentenced to eighteen months in New Jersey State Prison, and ordered to not return to the property or have future contact with the victims. (*Id.*)[5]

### C. Plaintiff's Federal Lawsuit

On August 13, 2020, Plaintiff filed suit in this Court against various defendants, including State Defendants. Plaintiff claims, among other things, that State Defendants were involved in a "massive conspiracy, chain conspiracy," in which "each person [was] responsible for a distinct act

---

[4] Plaintiff was also ordered to undergo a mental health evaluation and follow treatment recommendations. (*Id.*)

[5] The criminal trespass and harassment charge were dismissed. (*Id.*) Konzelmann, an attorney employed by the Office of the Public Defender, was "standby" counsel in the first jury trial, and he represented Plaintiff in the second jury trial. (*Id.* at 16.)

4

within the overall plan." (ECF No. 1.) Plaintiff asserts claims under 42 U.S.C. § 1983 and 18 U.S.C. § 1001.[6]

On October 23, 2020, State Defendants filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 4.) Plaintiff did not file an opposition.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Rule 12(b)(1) mandates the dismissal of a case for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). An assertion of Eleventh Amendment immunity is a challenge to a district court's subject matter jurisdiction. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 (3d Cir. 1996) ("[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction.") (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984)). Typically, when jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuading the court that subject matter jurisdiction exists. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). However, because "Eleventh Amendment immunity can be expressly waived by a party, or forfeited through non-assertion, it

---

[6] Here, Plaintiff is proceeding *pro se*. "The obligation to liberally construe a pro se litigant's pleadings is well-established." *Higgs v. AG of the United States*, 655 F.3d 333, 339 (3d Cir. 2011); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 52021 (1972). "Courts are to construe complaints so as to do substantial justice, keeping in mind that pro se complaints in particular should be construed liberally." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (citations omitted). "Liberal construction does not, however, require the Court to credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). In that regard, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "Even a pro se complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Grohs*, 984 F. Supp. 2d at 282; *Bhimnathwala v. N.J. State Judiciary, Fam. Div.*, Civ. A. No. 1921389, 2020 WL 7237947, at *4 (D.N.J. Dec. 9, 2020).

5

does not implicate federal subject matter jurisdiction in the ordinary sense," and therefore, a party asserting Eleventh Amendment immunity bears the burden of proving its applicability. *Christy v. Pa. Tpk. Comm.*, 54 F.3d 1140, 1144 (3d Cir. 1994); *see also Carter v. City of Philadelphia*, 181 F.3d 339, 347 (3d Cir. 1999); *Chitester v. Dep't of Child Prot. Permanency*, Civ. A. No. 17-12650, 2018 WL 6600099, at *2 (D.N.J. Dec. 17, 2018).

In evaluating a Rule 12(b)(1) motion to dismiss, the court must determine whether the motion attacks the complaint as deficient on its face, or whether the motion attacks the existence of subject matter jurisdiction in fact, apart from any pleadings. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977). "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *id.* at 891). However, "[i]n reviewing a factual attack, the court may consider evidence outside the pleadings." *Id.* at 176 (citing *Gotha v. United States*, 115 F.3d 176, 178–79, (3d Cir. 1997)).

### B. Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a

6

legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

### III. DECISION

As a preliminary matter, this Court notes the July 23, 2017 Order (the "Standing Order") issued by the Honorable Peter G. Sheridan, U.S.D.J. directing the Clerk's office not to file any pleadings submitted by Plaintiff unless he obtained the Court's approval. Judge Sheridan further ordered Plaintiff could not seek leave to file any pleadings unless he certified that the claims asserted had not been raised and disposed of on the merits by any federal or state court. (*See* Civil Action 16-cv-5901 (PGS) (ECF No. 27)).[7] Here, Plaintiff has failed to seek Court approval for the filing of the Complaint. In any case, the Court has permitted the case to proceed and will adjudicate this matter once and for all.

---

[7] Indeed, Judge Sheridan reasoned Plaintiff has repeatedly filed complaints on matters that were dismissed for one of several reasons. "The complaints were (a) frivolous; (b) previously litigated in New Jersey Superior Court or a municipal court of the State of New Jersey; and/or (c) generally failed to comply with Rule 8." (*See* Civil Action 16-cv-5901 (PGS) (ECF No. 30 at 4)). In that connection, "[t]he Court has the inherent authority to control and manage the docket to achieve judicial efficiency and to secure just results," and Plaintiff's "ongoing actions disrupt efficiency and usurp time that is best used on substantive matters." (*Id.*)

8

### A. The Defendant Judges are entitled to Judicial Immunity[8]

Plaintiff asserts, among other things, Judge Cleary "failed to acknowledge the answer" that was filed in response to the Foreclosure Complaint and incorrectly "went forward" with granting summary judgment in GDBT I Trust 2011-1's favor. (ECF No. 1 at 6.) Plaintiff also alleges his due process rights were violated because he never received a copy of the summary judgment order, which hindered his ability to appeal. (*Id.* ("This order was never sent out denying me the ability to appeal such order in turn denying me due process.").) Plaintiff contends Judge Cleary's findings on summary judgment and subsequent motions were contrary to "the Law of the Land" and are therefore, "void ab initio." (*Id.*) Plaintiff further argues Judge Cleary "failed to adhere to her oath of office [and] uphold the constitution and code of judicial conduct to remain impartial when she allowed a corporation to come before her who she knew was not license[d] or registered to do business in New Jersey." (*Id.* at 7.)

Concerning Judge O'Brien, Plaintiff contends he "ignore[d]" his motion for a speedy trial. (*Id.* at 11.) Plaintiff also alleges Judge O'Brien "violated [his] constitutional rights when he failed to be impartial," and "sided with the Prosecutor" even though Judge O'Brien "was not furnished with any evidence" to support his findings. (*Id.* at 14.)

State Defendants argue, among other things, Plaintiff's claims against the Defendant Judges should be dismissed pursuant to absolute judicial immunity. (ECF No. 4-1 at 25.) Specifically, State Defendants assert the claims against Judge Cleary should be dismissed because,

> Judge Cleary was authorized to order foreclosures and hear challenges to jurisdiction. Foreclosure proceedings are unquestionably judicial in nature. Hence, Judge Cleary's decision to order foreclosure of Plaintiff's property and reject the jurisdictional

---

[8] Because the Court finds the Defendant Judges are entitled to absolute judicial immunity, the Court will not delve into any of State Defendants' other arguments in favor of dismissal.

> challenge were judicial functions within the ambit of judicial immunity. The ensuing acts of granting summary judgment and ordering foreclosure are judicial functions "normally performed by a judge." *See Stump*, 435 U.S. at 362. Importantly, Plaintiff's allegations that Judge Cleary's decisions were somehow "incorrect" have no bearing on this analysis and do not strip her of judicial immunity. *See Gallas*, 211 F.3d at 769.

(*Id.* at 28.)

Similarly, State Defendants argue

> Plaintiff's claims against Judge O'Brien lack merit . . . . As a Superior Court Judge of the Law Division, Criminal Part in Monmouth County, Judge O'Brien was tasked with presiding over criminal proceedings, including hearing and deciding pre-trial motions. Speedy trial motions in criminal cases are undoubtedly judicial in nature. Thus, Judge O'Brien's decision to deny Plaintiff's pre-trial motions in criminal court fall within the scope of judicial immunity, irrespective of the "correctness" of the decision. Equally meritless is Plaintiff's nebulous contention that Judge O'Brien somehow "sided with the Prosecutor" because allegations of malice or bad faith are insufficient to overcome immunity.

(*Id.* at 28–29.)

The Court agrees Plaintiff's claims against the Defendant Judges are barred by absolute judicial immunity. Absolute judicial immunity applies to all claims, whether official-capacity or personal-capacity, that are based on judicial acts. *See Dongon v. Banar*, 363 F. App'x 153, 155 (3d Cir. 2010) ("[J]udges are entitled to absolute immunity from liability based on actions taken in their official judicial capacity.") (citing *Briscoe v. LaHue*, 460 U.S. 325, 334 (1983)). "A judge will not be deprived of immunity because the action [ ]he took was in error, was done maliciously, or was in excess of [his] authority[.]" *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978). The immunity is not vitiated by "allegations of malice or corruption of motive." *Gromek v. Maenza*, 614 F. App'x 42, 45 (3d Cir. 2015) (quoting *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000).

Following the Supreme Court's guidance, the lower courts "must engage in a two-part inquiry to determine whether judicial immunity is applicable." *Gallas*, 211 F.3d at 768. "'First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity.'" *Id.* at 768 (quoting *Mireles*, 502 U.S. at 11). "'Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.'" *Id.* "With respect to the first inquiry, 'the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.'" *Id.* at 768–69 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). The courts must "'draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges,' such as administrative acts." *Id.* at 769 (quoting *Forrester v. White*, 484 U.S. 219, 227 (1988)).

"With respect to the second inquiry, [courts] must distinguish between acts in the 'clear absence of all jurisdiction,' which do not enjoy the protection of absolute immunity, and acts that are merely in 'excess of jurisdiction,' which do enjoy that protection." *Id.* at 769 (citing *Stump*, 435 U.S. at 356 n. 6). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id.* (quoting *Stump*, 435 U.S. at 356–57).

Here, Judge Cleary's decision to grant summary judgment in GDBT I Trust 2011-1's favor and rule against him in the foreclosure proceeding falls within the judicial functions normally performed by a judge. It is plain from the Complaint that Plaintiff seeks redress for actions taken in Judge Cleary's official capacity as a judicial officer. Indeed, Plaintiff's allegations pertain only

to Judge Cleary's decision-making during the foreclosure proceeding before her in New Jersey state court. (*See* ECF No. 1 at 6.) Further, there is no indication Judge Cleary acted in complete absence of her judicial jurisdiction. As such, both prongs are met. *Ehrlich v. Alvarez*, Civ. A. No. 20-6398, 2021 WL 2284108, at *7 (D.N.J. June 4, 2021); *Nemeth v. Off. of the Clerk of the N.J. Superior Ct.*, Civ. A. No. 19-16809, 2020 WL 2537754, at *7 (D.N.J. May 19, 2020), *aff'd sub nom. Nemeth v. Off. of Clerk of Superior Ct. of N.J.*, 837 F. App'x 924 (3d Cir. 2020) (noting that where the judge was authorized to hear foreclosure actions in New Jersey, "including the foreclosure at issue," there would be "no basis to find" the judge acted in clear absence of jurisdiction such that he would be stripped of judicial immunity). Therefore, Judge Cleary is entitled to absolute judicial immunity.[9]

Likewise, Judge O'Brien's decision to deny Plaintiff's pre-trial motions in criminal court falls within the scope of judicial immunity, irrespective of the "correctness" of this decisions. *See Edwards v. New Jersey*, Civ. A. No. 20-7427, 2020 WL 5810571, at *5 (D.N.J. Sept. 30, 2020).

---

[9] Importantly, judicial immunity does not per se bar non-monetary damages sought through injunctive or declaratory relief. *Pulliam v. Allen*, 466 U.S. 522, 527 (1984); *see Leeke v. Timmerman*, 454 U.S. 83, 85 (1981). However, the 1996 amendment to § 1983 bars injunctive relief against state court judges brought under that statute. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006). While a plaintiff may request declaratory relief, he/she must show a likelihood of future injury, as declaratory judgment is an inappropriate remedy to proclaim liability for past actions. *Id.*; *Gochin v. Thomas Jefferson Univ.*, Civ. A. No. 16-6153, 2017 WL 2152177, at *8 (E.D. Pa. May 17, 2017). Instead, declaratory relief is meant to "define legal rights and obligations" for future conduct between parties. *Id.*; *Rutkowitz v. Turner*, Civ. A. No. 17-6622, 2018 WL 3388306, at *5 (D.N.J. July 12, 2018).

Here, the non-monetary relief sought (*i.e.*, the return of the foreclosed property to Plaintiff) is improper. Indeed, declaratory relief is only appropriate for future conduct, but here, relief is sought for alleged harm caused by past decisions made by Judge Cleary. Plaintiff does not, however, provide facts demonstrating how a future injury is likely to be caused by Judge Cleary (or Judge O'Brien). As such, declaratory relief is improperly pled. Therefore, all federal and state claims against the Defendant Judges for civil damages and declaratory relief are dismissed.

Indeed, as a judge in New Jersey Superior Court, Criminal Part, Judge O'Brien was tasked with presiding over criminal proceedings. Further, Plaintiff's contention that Judge O'Brien somehow "sided with the Prosecutor" is insufficient to overcome immunity. *Gallas*, 211 F.3d at 769 ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'"). Plaintiff's claims against Judge O'Brien arise solely from his judicial conduct. (*See* ECF No. 1 at 14.) Therefore, Judge O'Brien is entitled to absolute judicial immunity on Plaintiff's claims.

Accordingly, Plaintiff's claims against the Defendant Judges are dismissed with prejudice.

**B. The State is entitled to Eleventh Amendment Sovereign Immunity**

The only allegation against the State that the Court can glean from the Complaint is Plaintiff's assertion that "the State never had jurisdiction hear any matter regarding GDBT I Trust 2011-1." (ECF No. 1 at 13.) State Defendants argue, among other things, this allegation should be dismissed because the State is entitled to Eleventh Amendment sovereign immunity and that none of the exceptions to immunity apply. (ECF No. 4-1 at 19.)

The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought. *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Therefore, based on the doctrine of sovereign immunity, states cannot be sued in federal court, unless Congress has abrogated that immunity or the State has waived it. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). The consent to be sued "must be 'unequivocally expressed' in statutory text, and cannot simply be implied." *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004) (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992)).

Here, Congress has not abrogated the State's immunity, nor is there any indication that the State has waived it. *See United States v. Testan*, 424 U.S. 392, 40002 (1976); *Desposito v. New Jersey*, Civ. A. No. 14-1641, 2015 WL 2131073, at *5 (D.N.J. May 5, 2015) (providing that the "State of New Jersey [] is not amenable to suit under § 1983. It is well-established that States are not 'persons' within the meaning of § 1983. Further, Eleventh Amendment immunity 'protects both states and state agencies as long as the state is the real party in interest.'") (citations omitted). The Court, therefore, lacks subject matter jurisdiction over Plaintiff's § 1983 claims against the State, as it is protected by sovereign immunity, and none of its exceptions apply.

Accordingly, Plaintiff's claims against the State are dismissed with prejudice.

**C. Konzelmann is not liable under Section 1983**

Plaintiff alleges Konzelmann was his "standby attorney," in the state court criminal proceeding who "failed to adhere to his Rule of professional conduct when he allowed Joseph Cumming and [Judge] O'Brien to violate [his] rights without reporting them to the appropriate authorities." (ECF No. 1 at 14.) Plaintiff also alleges "Konzelmann violated RPC 8.3 (a)&(b) Reporting a Professional Misconduct." (*Id.*) State Defendants argue Plaintiff's claims against Konzelmann are "legally unsound" because "§ 1983 liability does not attach to Plaintiff's claims against Konzelmann [as] he was not acting under color of state law at the time in question." (ECF No. 4-1 at 9, 30.) Specifically, State Defendants argue,

> Plaintiff was representing himself and Konzelmann – an attorney affiliated with the Office of the Public Defender – was appointed as standby counsel when the assistant prosecutor and Judge O'Brien purportedly violated Plaintiff's rights during the course of the state court criminal proceeding. Konzelmann was performing the traditional functions of standby counsel, namely standing by while Plaintiff defended his case before the court and jury.

(*Id.* at 30–31.)

In *Polk Co. v. Dodson*, the Supreme Court held that a public defender, although paid and ultimately supervised by the state, "does not act under color of state law when performing the traditional functions of counsel to a criminal defendant." 454 U.S. 312, 325 (1981). *See also Vermont v. Brillon*, 556 U.S. 81, 91 (2009) ("Unlike a prosecutor or the court, assigned counsel ordinarily is not considered a state actor."); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) (private attorneys were not acting under color of state law when they issued subpoenas); *Calhoun v. Young*, 288 F. App'x 47, 49–50 (3d Cir. 2008) (public defender representing criminal defendant is not acting under color of state law); *Thomas v. Howard*, 455 F.2d 228 (3d Cir. 1972) (court-appointed pool attorney does not act under color of state law). Because a public defender "is not liable under § 1983 when performing a lawyer's traditional functions," Plaintiff's claims against Konzelmann are dismissed with prejudice. *Stankowski v. Farley*, 251 F. App'x 743, 747 (3d Cir. 2007).

"Public defenders may be liable, however, for intentional misconduct if they conspire with state officials to deprive their clients of constitutional rights." *Id.* (citing *Tower v. Glover*, 467 U.S. 914, 923 (1984)). Here, to the extent a conspiracy claim is raised, Plaintiff fails to allege any specific facts as to the nature or conduct of the alleged conspiracy. "[Section] 1983 claims against . . . defense attorneys are . . . unavailing . . . [where Plaintiff] has presented only conclusory allegations of conspiracy, which are insufficient from a pleading perspective." *Pittman v. Martin*, 569 F. App'x 89, 91–92 (3d Cir. 2014) (citing *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178–79 (3d Cir. 2010)). Consequently, to the extent alleged, the conspiracy claim is not pleaded with the requisite particularity and is also dismissed. *Udoh v. Moreira*, Civ. A. No. 142929, 2018 WL 623676, at *7 (D.N.J. Jan. 30, 2018), *aff'd*, 783 F. App'x 158 (3d Cir. 2019); *Owens v. Armstrong*, 171 F. Supp. 3d 316, 335 (D.N.J. 2016).

Accordingly, Plaintiff's claims against Konzelmann are dismissed with prejudice.

## IV. CONCLUSION

For the reasons set forth above, State Defendants' Motion to Dismiss is **GRANTED** and Plaintiff's Complaint is **DISMISSED with PREJUDICE**.[10] An appropriate order follows.

Dated: June 30, 2021

*/s/ Brian R. Martinotti*
**BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

---

[10] Plaintiff also alleges violations of 18 U.S.C. § 1001 (false claims). Plaintiff cannot bring criminal charges in this Court; that power lies solely with the executive branch. *See Dicent v. Sears Holdings*, Civ. A. No. 3:17-332, 2017 WL 1045066, at *5 (M.D. Pa. Feb. 27, 2017) (citing cases), *report and recommendation adopted*, Civ. A. No. 3:17-00332, 2017 WL 1042470 (M.D. Pa. Mar. 17, 2017). *see also Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) ("[C]laims based on the violation of federal criminal statutes, such as 18 U.S.C. §§ 241–242[ ] . . . are not cognizable, as federal criminal statutes do not provide private causes of action.") "These claims are dismissed as legally frivolous because they lack "an arguable basis . . . in law." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Telfair v. Post*, Civ. A. No. 18-3842, 2018 WL 3054679, at *12 (D.N.J. June 20, 2018).

Therefore, Plaintiff is unable to maintain claims under this statute against any of the Defendants. *See, e.g.*, *Lee v. U.S. Agency for Int'l Dev.*, 859 F.3d 74, 77–78 (D.C. Cir. 2017) (finding that no private right of action is available under 18 U.S.C. § 1001); *Dugar v. Coughlin*, 613 F. Supp. 849, 852 n.1 (S.D.N.Y. 1985) (finding that no private right of action is available under 18 U.S.C. § 2071).